IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARK SINGER                      )
                                 )
        Plaintiff,        )
                                 )
                                 )
                                 )
     v.                    )  No. 19 C 3954
                                 )
                                 )
CITY OF CHICAGO,          )
                                 )
        Defendant.        )
                                 )
                                 )

## Memorandum Opinion and Order

Plaintiff Mark Singer alleges that the City of Chicago violated his constitutional rights under the Fifth and Fourteenth Amendments and Illinois law by failing to inform him of the procedures required to recover property seized from his home, and by disposing of some of that property without just compensation. The complaint alleges that in October of 2012, Chicago Police officers executed arrest and search warrants at plaintiff's home, during which they arrested plaintiff and seized camera equipment, valuable pens and pencils, and rare, lawfully-possessed firearms. In total, plaintiff's seized property was allegedly worth hundreds of thousands of dollars. Although the criminal charges against

plaintiff were dismissed in June of 2014, the seized property was not returned to him, nor was he told how to recover it.

After learning in the spring of 2018 that the Chicago Police Department's Evidence & Recovered Property Section had been holding his property during the pendency of his criminal proceedings, plaintiff visited that office and discovered that some of his property had been destroyed, lost, or sold. Indeed, plaintiff alleges that the City has a policy of destroying, confiscating, or selling property not claimed by a criminal defendant within thirty days of the defendant's final court date. Plaintiff ultimately obtained court orders for the release of the property remaining in the City's possession, but as of the date of his complaint, only a portion of that property had been returned to him.

The City seeks dismissal of plaintiff's constitutional claims on the grounds that: 1) the City's alleged policy of requiring a court order before releasing seized property is not unconstitutional as a matter of law; 2) plaintiff has no constitutional right to an individualized explanation of how to recover his property, since that information is publicly available; and 3) the Fifth Amendment takings clause does not apply when the government seizes private property in the exercise of its police power. In addition, the City argues that plaintiff's constructive bailment claim under Illinois law must be dismissed

2

because no bailor-bailee relationship exists between plaintiff and the City. For the following reasons, the motion is granted in part.

I begin with plaintiff's takings claim under the Fifth Amendment, which fails for the straightforward reason that the takings clause "does not apply when property is retained or damaged as a result of the government's exercise of its authority pursuant to some power other than the power of eminent domain." *Johnson v. Manitowoc County*, 635 F.3d 331, 336 (7th Cir. 2011). That is precisely what is alleged to have occurred here. Plaintiff states that his property was seized pursuant to a search warrant, and nothing in his complaint challenges the validity of the warrant or the City's acquisition of his propriety in the first instance. Plaintiff acknowledges that in *Bennis v. Michigan*, 516 U.S. 442, 452 (1996), the Supreme Court held that "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain." But he argues that *Bennis* does not apply because the City continued to hold his property past the point of any legitimate exercise of its police power. *See* Resp. at 7. By plaintiff's lights, the City's continued possession of his property beyond any possible need to use it in criminal proceedings transformed an initially lawful seizure into "the naked exercise of eminent domain." *Id*. If there is any authority for this theory, however, plaintiff has not cited it.

3

The only case plaintiff invokes in support of his takings claim, *Conyers v. City of Chicago*, 162 F. Supp. 3d 737 (N.D. Ill. 2016), does not avail him. In *Conyers*, the court rejected the plaintiffs' second attempt to state an actionable takings claim based on the City's "policies pertaining to the destruction of retained personal property" of inmates at the Cook County Jail. *Id*. at 740. The court had rejected a previous iteration of the claim in *Conyers v. City of Chicago*, 2015 WL 1396177 (N.D. Ill. Mar. 24, 2015), concluding that because the gravamen of the plaintiffs' complaint was "that the City destroyed [the plaintiffs'] property without adequate notice" of the procedures for reclaiming it, their claim sounded in due process, not the takings clause. *Id*. at \*4. So it is here. And while the *Conyers* court's successive dismissals of the plaintiffs' takings claim rested on different grounds than the one the City now asserts, nothing in its analysis suggests a way around the rule of *Bennis* and *Johnson* on the facts alleged in the complaint.

Plaintiff's due process claim requires a more nuanced analysis. At the outset, it bears recalling that when an individual's property is seized, due process requires both adequate *notice* of the process for reclaiming the property as well as adequate *procedures* for doing so before the individual may be deprived of his or her interest in the property. *See Gates v. City of Chicago*, 623 F.3d 389, 405 (7th Cir. 2010). Here, plaintiff

4

challenges both the adequacy of the notice he received and the adequacy of the procedures themselves, relying on *Gates* for both dimensions of his claim.

In *Gates*, as in this case, the plaintiffs asserted due process claims based on their inability to retrieve property confiscated from them upon their arrest. They alleged that the "Notice to Property Owner or Claimant" forms they received provided instructions for recovering property that were both misleading and impossible to follow in that they required the plaintiffs to present documents they were unable to obtain and to seek orders the City conceded it might not honor. *See id*. at 396-96, 411. The court rejected the City's argument that the notice form was adequate under *City of West Covina v. Perkins*, 525 U.S. 234 (1999), which held that local entities are not required to provide "detailed and specific instructions or advice to owners who seek return of property lawfully seized but no longer needed for police investigation or criminal prosecution." *Gates,* 623 F.3d at 397 (quoting *West Covina*, 525 U.S. at 236). The court acknowledged that under *West Covina*, the City was not required to provide "individualized notice of any publicly available state law remedies for the return of their property," *id*. at 399, but pointed to evidence that "[t]he procedures the police department actually employed are not available in documents that are published and generally available," and were "revealed nowhere except possibly

in the Police Department's General Orders," *id*. at 400. The court concluded that "[a]lthough *West Covina* controls as to the procedures set forth in state statutes [requiring that arrestees be informed of the fact of the seizure and provided an inventory of the items seized], it does not control as to the City's additional difficult-to-access police department rules." *Id*. at 399.

In this case, the City argues that *West Covina* forecloses plaintiff's claim for deficient notice because he does not allege that he was required to invoke any procedures other than those generally available under Illinois statutory law, citing 725 ILCS 5/108 ("Section 108"). It is true that under *West Covina*, plaintiff was not entitled to notice of procedures available pursuant to state law. But plaintiff challenges not only the City's failure to notify him of its requirement that he obtain the court order contemplated in Section 108,[1] but also the City's failure to inform him of its alleged policy of destroying, confiscating, or selling property "not claimed by a criminal defendant within 30 days of his or her final court date." Compl. at ¶ 11. The City does not

_____

[1] Section 108-11 of the Illinois Code provides that after seized property has been returned to the court, "[t]he court before which the instruments, articles or things are returned shall enter an order providing for their custody pending further proceedings." 725 ILCS 5/108-11. Neither this provision nor any other the parties cite addresses who bears the burden of seeking such an order, nor is it clear whether the City obtained one prior to disposing of the property seized in this case.

argue that anything in Section 108 (or any other source of law) establishes procedures relating to such a policy. Accordingly, if that policy exists and was implemented to deprive plaintiff of his property rights, plaintiff was entitled to notice. *See Gates*, 623 F.3d at 399 (citing *Memphis Light, Gas & Water Division v. Craft*, 436 U.S. 1 (1978)).

The City further argues that the procedures codified in Section 108 are constitutionally adequate in substance. The City insists that requiring plaintiff to obtain a court order to recover his property (and to prevent the City from disposing of it in the meantime) did not violate due process because it did not impose an undue burden on him. In the City's view, *Gates* "simply did not address" whether requiring a property owner to obtain a Section 108 order to recover his or her property is consistent with due process. Reply at 2. The City is mistaken. The *Gates* court held that to the extent the City requires property owners "to seek a court order releasing their property (an order the City admittedly will not honor in certain cases) then those procedures may not comport with due process," noting that such a procedure "improperly places on the arrestee the burden of proof to establish that he had a lawful right to the property." 623 F.3d at 411 (citing *McClendon v. Rosetti*, 460 F.2d 111 (2d Cir. 1972)). And while the City faults plaintiff for waiting four years before seeking to recover his property, if the complaint is taken at face value,

then some portion of plaintiff's property may have been lost to him as soon as a month after his criminal proceedings ended, pursuant to a policy he had no knowledge of and could not reasonably have discovered. Plaintiff's due process claim is not appropriate for dismissal on these facts.

This leaves plaintiff's claim for constructive bailment under Illinois, which the City seeks to dismiss on the ground that no bailment relationship is created when law enforcement effectuates a seizure of personal property. As plaintiff acknowledges, a bailment ordinarily arises out of a contractual relationship. "Under Illinois law, a 'bailment is the delivery of property for some purpose upon a contract, express or implied, that after the purpose has been fulfilled, the property shall be redelivered to the bailor, or otherwise dealt with according to his directions, or kept until he reclaims it.'" *Toll Processing Servs., LLC v. Kastalon, Inc.*, 880 F.3d 820, 827 (7th Cir. 2018). Plaintiff's theory in this case, however, is that a bailment arose out of operation of law, relying on *Chesterfield Sewer & Water, Inc. v. Citizens Ins. Co. of N.J.*, 207 N.E.2d 84, 86 (Ill. App. Ct. 1965); *American Ambassador Casualty Co. v. City of Chicago*, 563 N.E.2d 882, 884-85 (Ill. App. 1990); and *Zissu v. IH2 Prop. Illinois, L.P.*, 157 F. Supp. 3d 797, 802 (N.D. Ill. 2016). It is true that in these cases, which comprise a range of factual scenarios, the courts held that a constructive bailment could arise absent an

agreement. But none supports a bailment theory premised on a law enforcement seizure. Moreover, courts that have addressed bailment claims in that context have rejected them. *See, e.g.*, *Fikes v. Whitesell*, No. 4:11-CV-00034-TWP, 2011 WL 5025523, at *5 (S.D. Ind. Oct. 20, 2011) ("courts have routinely ruled that police seizures do not create bailment relationships")(citing *Alde, S.A. v. U.S.* 28 Fed. Cl. 26, 30 (1993) (cases addressing implied bailment "evince a uniform reluctance to find an implied bailment contract ...where plaintiff's property has been seized pursuant to the Government's exercise of its police power"(citing cases)); *Scope Enterprises, Ltd. v. United States*, 18 Cl. Ct. 875, 884 (1989) (seizure by Customs Service of money used in unlawful export of military and high technology did not result in bailment agreement); and *Campbell v. Chappelow*, 95 F.3d 576, 580 (7th Cir. 1996) (finding "no authority supporting [the plaintiffs'] argument that the concept of bailment applies" in the context of a seizure by law enforcement pursuant to a warrant). Although Illinois courts apparently have yet to confront the issue, I am not persuaded that they would recognize a constructive bailment on the facts of this case.

For the foregoing reasons, defendant's motion to dismiss is granted in part. Plaintiff's claim under the Fifth Amendment's takings clause and his claim for constructive bailment under Illinois law are dismissed.

9

**ENTER ORDER:**

**Elaine E. Bucklo**
United States District Judge

Dated: January 24, 2020